### Grooms v. National Bank of Kentucky, et al.

(Decided March 15, 1927.)

#### Appeal from Allen Circuit Court.

1. Bills and Notes—In Action to Set Aside Judgment on Notes for Fraud, Evidence Held Not to Show that Notes Had Been Paid.— In creditor's action to set aside judgment on notes with foreclosure of liens against debtor's land, on the ground of fraud in that the notes had been paid, evidence held not to show payment of notes.

2. Estoppel—Maker and Payee of Notes who Represented that Notes Were Good and Thereby Induced Their Acceptance as Security for Professional Services Held Estopped to Allege Prior Payment. —Maker and payee held estopped to say that notes were paid, where they represented that the notes were good and by these representations induced attorneys for maker to accept the notes as security for their fee for professional services.

3. Attachment—Creditor Attaching Land Incumbered by Lien Securing Notes, Could Not Assert that Notes were Paid, Where Debtor Could Not.—Where debtor was estopped to assert payment of notes secured by lien on land, creditor attaching land was likewise unable to assert that the notes had been paid, since an attaching creditor takes only the rights of the debtor at the time of levy.

4. Judgment—While Judgment Foreclosing Purchase-Money Lien, which Does Not Fully Describe Land, May be Reversed, Judgment is Good Until Reversed if Land Can be Identified.—While judgment for sale of land to pay purchase-money lien which does not fully describe land may be reversed on appeal, the judgment is good until reversed if the land is so described that it may be identified.

5. Vendor and Purchaser—Filing of Title Papers is Not Essential in Action on Purchase-Money Notes Secured by Lien on Land.—In

action on purchase-money notes secured by lien on land, filing of title papers is not essential.

6. Judgment—Plaintiff Might Not Attack Judgment on Notes Because Intervener Did Not Summon Defendant Without Setting Aside Agreement and Returning Compensation Received.—Plaintiff might not attack by separate action judgment rendered on notes, on the ground that interveners did not summon the defendant into court, without first setting aside an agreement made between all parties and judgment rendered pursuant thereto, under which agreement defendant paid money to plaintiff and interveners for assignment of their claim, and offering to return compensation received.

JOHN E. RICHARDSON for appellant.

F. R. & N. G. GOAD and W. D. GILLIAM for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

On September 11, 1923, the National Bank of Kentucky filed an action in the Allen circuit court against H. L. Grooms and others to recover on a note executed by Grooms for $8,070.94, which was secured by various pieces of collateral. An attachment was taken out which was levied on the homestead tract of land on which H. L. Grooms resided. Judgment was entered against Grooms on February 2, 1924, adjudging the bank a lien on the land for the balance due upon the notes and adjudging a sale of the collateral and the land. On March 27, 1924, A. J. Oliver and T. B. Dixon filed their intervening petition in which they alleged that they held two notes, each for a thousand dollars, executed by H. L. Grooms to S. C. Downing, for the purchase money for the land, and alleged that the deed was of record, and that the deed retained a lien on the land for the payment of the notes. On April 23 the commissioner filed his report of sale made on April 7, 1924, showing that R. B. Grooms was the purchaser of the land for $4,150.00. On April 29, R. B. Grooms filed his exceptions to the sale on the ground that four acres of the land had been sold by H. L. Grooms, and that he did not get title to all the land he bought. On May 3, 1924, the sale of land was confirmed, except as to the four acres, and the commissioner was directed to take proof and report on this matter. On the same day a judgment was entered in favor of Oliver and Dixon, adjudging them a prior lien upon the land and directing that they be first paid the $2,000.00, with interest, out of the proceeds of the sale bond for the land.

On September 24, 1924, an agreement was filed signed by the bank, Oliver and Dixon and the purchasers, R. B. Grooms, reciting the above facts, and concluding with these words:

"It appearing further that the said R. B. Grooms has this day paid to said A. J. Oliver and T. B. Dixon the amount of the judgment above mentioned, and that the same has been transferred to him for value received, as shown upon the margin of said record, and the National Bank of Kentucky realizing that the title to part of said property above described being sold may not be perfect and that the sale may not in all respects be regular, and being willing for the same to be resold for the purpose of giving it an opportunity to realize as much as is possible upon its judgment in this action, and all parties in interest being satisfied in the way and manner above set out, and all parties in interest agreeing, do hereby consent for the sale to be set aside and order of sale herein be set aside, and that the master commissioner be ordered and directed to resell said property, known as the home place of H. L. Grooms, for the purposes set out and shown in the original judgment and the supplemental judgments, and direct that he advertise the same as provided by law before making said sale.

"It is further agreed that said R. B. Grooms be and his sureties be released upon the sale bond which was executed to the master commissioner when the aforesaid property was sold, and that they be not held liable upon the same, and it is agreed hereby that they shall not be held in any amount by reason of the execution of said bond, and the same is set aside and held for naught.

"It is agreed that the costs accruing and to hereafter accrue in this action shall be paid out of the proceeds of sale of the aforesaid property."

On the same day an order was entered by consent setting aside the former sale and directing the commissioner to sell the land again pursuant to the original judgment entered therein. On that day also Oliver and Dixon in writing assigned to R. B. Grooms the judgment theretofore entered in their favor and he paid them in cash $2,540.00

On February 3, 1925, the bank brought this suit against H. L. Grooms and R. B. Grooms in which it set out the proceedings in the former action (except the consent judgment), and prayed that the original judgment in that action be set aside for these reasons: (1) No process was had upon the intervening petition of Oliver and Dixon. (2) The title papers were not filed. (3) The land was not properly described in the judgment. (4) The judgment was obtained by fraud, in this, the two notes held by Oliver and Dixon had been paid before they were assigned by Downing to them. The issues were made up and on final hearing the circuit court adjudged the plaintiff the relief sought. R. B. Grooms appeals.

The proof utterly fails to show that the judgment was obtained by fraud or that the notes had been paid. S. G. Downing was the father-in-law of H. L. Grooms. He had sold Grooms and conveyed to him the land in consideration of $3,250.00. Grooms paid $1,250.00 cash and executed two notes, each for a thousand dollars. He was the cashier of the Fountain Run Bank. The bank failed and a number of indictments were returned against Grooms for felony. He employed Oliver and Dixon to defend him. They required their fee to be secured. He then said to them that his father-in-law would stand by him and that his father-in-law would assign to them the two notes referred to to secure their fee, which was $2,500.00. A day or two later he brought them the notes with the father-in-law's indorsement on them, and a short time after this they saw S. C. Downing and he told them, in substance, that somebody had to stand by H. L. Grooms, and that he had assigned the notes for this purpose. They defended Grooms in consideration of their fee being thus secured, and the notes not being paid obtained judgment on them as above stated.

In this action S. C. Downing testified, in substance, that before he assigned the notes to Oliver and Dixon it had been agreed between him and his son-in-law that Grooms, as cashier of the bank, would give him credit for the amount of the notes on a note which the bank held against him, and that about the time the bank closed or after this Grooms showed him where he had given him this credit. He also testified that Grooms had sold two notes belonging to Mrs. Downing, and that, as a part of the transaction in regard to his notes, Grooms agreed to get up the money and pay Mrs. Downing, but had not done so. This evidence wholly failed to show that the

notes of Grooms to Downing had been in fact paid when they were assigned by Downing to Oliver and Dixon. The agreement of the cashier of the bank to give Downing credit on the bank's note against Downing for the amount of Grooms' notes, which Downing held, and thus settle these notes, was simply an agreement by the cashier to pay his own debt with the money of the bank. This he had no authority to do, and Downing, his father-in-law, having notice of his want of authority, could not insist on the contract. It was void as to the bank. Grooms could not carry it out without embezzling the money of the bank. Not only so, but both Grooms and Downing represented to Oliver and Dixon that the notes were good, and by these representations induced Oliver and Dixon to accept the notes as security for their fee. They thus gave value for the notes, and as against them both Downing and Grooms were estopped to say that the notes were paid. To so maintain against them would be a fraud by both Downing and Grooms under the facts. The bank's only lien upon the property was by virtue of its attachment. But its attachment was only levied on the property of H. L. Grooms. By the levy of its attachment it only acquired such rights in the property as H. L. Grooms had. An attaching creditor takes by virtue of his levy only such rights as the debtor had when the levy was made. H. A. Thierman v. Laupheimer, 55 S. W. 925; Ky. Refining Co. v. Bank of Morilton, 89 S. W. 492; R. C. Poage Milling Co. v. Economy Fuel Co., 128 S. W. 311. As neither Grooms nor Downing can maintain that the notes were paid before they were assigned to Oliver and Dixon, and as the bank by its attachment acquires no greater equity than its debtor had, the bank cannot maintain as against Oliver and Dixon that the notes were paid before they were assigned to them. 2 R. C. L., p. 857, sec. 68; 6 C. J., p. 242, sec. 466.

The other grounds for opening the judgment may be briefly disposed of. The land was sufficiently described in the judgment to identify it. While a judgment which does not fully describe the land may be reversed as erroneous on appeal, such a judgment, if the land is so described that it may be identified, is good unless reversed. The statute does not require the title papers to be filed in a case like this. But in fact the title papers were afterwards filed. The record is badly copied; some of the record is apparently missing. There is no summons in the record on the petition of Oliver and Dixon; there

is also no attachment in the record on the petition of the bank. But, however this may be, the bank cannot complain that H. L. Grooms was not before the court on the petition of Oliver and Dixon without first setting aside its written contract of September 19, 1924, and the judgment entered pursuant thereto. And this it has not done or attempted to do. In that settlement R. B. Grooms not only paid Oliver and Dixon $2,540.00, but he also paid the bank $400.00 as a bonus for the settlement, and this it retains and has never offered to return.

Judgment reversed and cause remanded, with directions to dismiss the petition.